UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-cv-00649 (JFB)(ARL)
_____

NORMA F. YOUNG

Plaintiff,

VERSUS

NASSAU UNIVERSITY MEDICAL CENTER

Defendant.

_____

**MEMORANDUM AND ORDER**
December 22, 2011
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Norma F. Young ("plaintiff" or "Young") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against defendant Nassau University Medical Center ("defendant" or "NUMC"), alleging that defendant terminated her employment as a housekeeper because of her race.

Defendant now moves, unopposed, for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), arguing that the undisputed facts do not give rise to a cognizable Title VII claim as a matter of law and no material issues of fact remain for trial. Despite plaintiff's failure to oppose this motion, the Court has conducted an independent review of the evidence in the moving papers, and finds that summary judgment is warranted.[1] The Court concludes that there are no genuine issues of material fact for trial and, construing the evidence in the light most favorable to plaintiff, no rational trier of fact could

---

[1] The Second Circuit has clearly established that a district court may not grant an unopposed summary judgment motion without carefully analyzing the moving papers to determine whether the moving party satisfies its burden of demonstrating that there are no material issues of fact for trial. *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[W]here the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001))).

conclude that defendant acted with discriminatory intent in terminating her employment. Specifically, the uncontroverted evidence is that defendant terminated plaintiff's employment because of multiple complaints about her job performance, and there is absolutely no evidence in the record to support an inference of race discrimination. Accordingly, defendant's motion is granted.

I. BACKGROUND

A. Facts

The Court has taken the facts described below from defendant's Local Civil Rule 56.1 statement of facts ("Def.'s. 56.1").[2]

Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff was hired by Nassau Health Care Corporation ("NHCC")[3] in August 2007 as a part-time Custodial Worker I. (Def.'s 56.1 ¶¶ 1, 3.) She interviewed with Carmen Orozco, NHCC's then-Acting Director of Housekeeping, and Orozco recommended plaintiff for the position. (Def.'s 56.1 ¶ 3.) Under the N.Y. Civil Service Law, plaintiff's employment was subject to a six-month probationary term, during which time "the employee holding the position shall not have any disciplinary protection." (Def.'s 56.1 ¶¶ 5, 6.) As a Custodial Worker I, plaintiff's job duties included performing "routine cleaning and manual work in the custodial care" of NUMC. (Def.'s 56.1 ¶ 7.)

In December 2007, Orozco offered plaintiff an upgrade to a position as a full-time Custodial Worker I. (Def.'s 56.1 ¶ 8.) The upgrade enabled the plaintiff to work additional hours and made her eligible for certain fringe benefits. (Def.'s 56.1 ¶ 9.) Plaintiff's employment in the full-time position was subject to an additional six-month probationary term. (Def.'s 56.1 ¶ 10.)

In January 2008, a physician sent Orozco a written complaint about plaintiff's performance. The physician reported that several patients complained about plaintiff's housekeeping, particularly that she left one patient's bathroom in a dirty and odorous state. (Def.'s 56.1 ¶ 11.) In May 2008, plaintiff had an altercation with a physician

---

[2] The Court notes that plaintiff has failed to file and serve a response to defendant's Rule 56.1 statement of facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504. Thus, in the instant case, although plaintiff has failed to submit any opposition to defendant's motion, the Court has carefully reviewed the evidence submitted in the moving papers and determined that the undisputed facts demonstrate that her claims create no material issues of fact and cannot survive summary judgment, as set forth *infra*.

[3] NHCC is a public benefit corporation located within Nassau County, New York, which was created to develop and manage Nassau County's health care system, including NUMC. (Def.'s 56.1 ¶ 1.)

about whether plaintiff was responsible for cleaning an on-call room, and plaintiff refused the physician's request in a disrespectful and confrontational way. (Def.'s 56.1 ¶ 12.) As a result of this incident, Orozco met with the plaintiff and directed her that cleaning the physician on-call room was part of plaintiff's job responsibilities. (Def.'s 56.1 ¶ 13.) In June 2008, Orozco received a written complaint from a third physician about plaintiff, stating that the plaintiff had refused to clean the on-call room, and had done so in a rude and unprofessional way by sucking her teeth and rolling her eyes. (Def.'s 56.1 ¶ 14.)

As a result of these complaints, Orozco rated plaintiff's probationary period as unsatisfactory and recommended plaintiff's discharge. (Def.'s 56.1 ¶ 16.) In July 2008, NHCC terminated Young's employment due to an unsatisfactory probationary period. (Def.'s 56.1 ¶ 16.)

Plaintiff acknowledged in her deposition that she has no evidence to show Orozco treated her disparately in giving her an unsatisfactory rating:

> Q: Are you aware of any probationary custodial worker with two or more documented complaints who was given a satisfactory probationary period?
>
> A. I have no clue.

(Def.'s 56.1 ¶ 17.) In fact, Orozco has never rated any probationary custodial worker with two or more documented complaints as satisfactory. (Def.'s 56.1 ¶ 19.)

Plaintiff is also unwilling to state on the record that Orozco took any action against plaintiff because of her race. (Def.'s 56.1 ¶ 18.) At the deposition, in response to a question about what actions Orozco took, plaintiff stated "I don't have to answer it. . . . When I going [sic] in front of the judge I will talk, not before you." (Def.'s 56.1 ¶ 18.)

During her tenure as Acting Director of Housekeeping, Orozco hired plaintiff, who is Black, and otherwise hired seven white employees, six Black employees, six Hispanic employees, and one Asian employee. (Def.'s 56.1 ¶ 20.)

Plaintiff fails to identify any racial jokes, comments, or utterances by Orozco that would reflect a racial bias. (Def.'s 56.1 ¶ 21.)

### B. Procedural History

Plaintiff filed her complaint on May 20, 2009 in the Southern District of New York. Defendant answered the complaint on December 7, 2009. The Clerk of the Court transferred the case to the Eastern District of New York on February 16, 2010. Defendant filed its motion for summary judgment on March 7, 2011. On August 4, 2011, the Court ordered the defendant to serve the plaintiff with the notice to *pro se* litigant required by Local Civil Rule 56.2 and to file said notice by August 16, 2011. The Court further ordered the plaintiff to respond by September 16, 2011, and ordered that if the plaintiff failed to respond by that date, the Court would consider the motion as unopposed. On August 10, 2011, defendant filed the required notice and included an affirmation of service on the plaintiff. Plaintiff did not file any opposition to the motion, and did not communicate with the Court in any way in response to the Court's Order.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only

3

grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see*

4

*also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Plaintiff alleges, under Title VII, that defendant discriminated against her by terminating her employment as a housekeeper because of her race. Defendant argues that plaintiff has failed to raise any genuine issues of material fact suggesting that plaintiff's race was a factor in the decision to terminate her.

As set forth below, the Court agrees and determines, construing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences therefrom, that no rational finder of fact could conclude that defendant's decision to terminate plaintiff was motivated by race-based animus.

Because plaintiff presents no direct evidence of discriminatory treatment based on her race, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) she was qualified for the position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the key inquiry is whether there is sufficient evidence in the

5

record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

Regarding the final prong of the *McDonnell Douglas* framework, it is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *accord Carter v. New Venture Gear, Inc.*, 310 Fed. App'x 454, 457 (2d Cir. 2009); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).

Analyzing the four elements plaintiff must satisfy to establish a *prima facie* case of discrimination, plaintiff has satisfied the first and third prongs of the test. As an African-American, she is a member of a protected class. She was terminated from her employment, which is an adverse employment action. *See Gladwin v. Pozzi*, 403 Fed. App'x 603, 606 (2d Cir. 2010) ("[Plaintiff], an African-American female, is a member of a protected class; given that she was fired, [plaintiff] suffered an adverse employment action."); *Norville*, 196 F.3d at 95 ("There is no dispute that as a black woman who was terminated from her job, [plaintiff] satisfied the first and third elements of her prima facie case, *i.e.*, she is a member of a protected class who suffered an adverse employment action.").

Plaintiff, however, has not satisfied the second or fourth prongs of the test. She received three written complaints during her probationary period, indicating that she was not qualified for the position. Furthermore, she has alleged no facts to support an inference of discrimination. The complaint is devoid of any allegations of discrimination. At the plaintiff's deposition, the following colloquy ensued:

> Q: Which actions were they? This is your chance to answer that question, ma'am, do you want to answer?
>
> A: I don't have to answer it.
>
> Q: No, you don't have to answer it.
>
> A: I don't have to answer it.
>
> Q: My question is: Do you want to? I am giving you the opportunity to articulate what actions you think Ms.

6

> Orozco took against you because of your race, do you want to answer that question?
>
> A: When I going in [sic] front of the judge I will talk, not before you.
>
> Q: Ma'am, this is your chance to answer the question, ma'am. Are you choosing not to answer the question?
>
> A: Uh-huh.

(Def.'s 56.1 ¶ 18.)

In the instant case, even assuming *arguendo* that plaintiff sustained a *prima facie* case of race discrimination, it does not defeat summary judgment on her ultimate claim. An employer's explanation of unsatisfactory performance in support of a termination decision is sufficient to meet the employer's burden to articulate a legitimate, nondiscriminatory reason for plaintiff's termination. *See Dorfman v. Doar Commc'ns, Inc.*, 314 Fed. App'x 389, 391 (2d Cir. 2009) ("Assuming *arguendo* that Appellant established a *prima facie* case of age discrimination, Appellee's evidence of Appellant's unsatisfactory work performance constituted a legitimate nondiscriminatory reason for Appellant's termination, one that Appellant failed to undermine as illegitimate or pretextual."); *Auguste v. New York Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 666 (S.D.N.Y. 2009) ("[P]oor work performance has often been recognized as a legitimate, non-discriminatory reason for termination" in retaliation cases). Defendant has provided ample evidence demonstrating that plaintiff's unsatisfactory performance was the reason for her discharge. During plaintiff's six-month probationary period, Orozco received three complaints, each from a different physician, concerning plaintiff's performance. The uncontroverted evidence demonstrates that Orozco determined that plaintiff had unsatisfactorily performed during her probationary period.

With respect to the final step of the *McDonnell Douglas* three-step framework, there is no evidence to suggest that NUMC used the plaintiff's poor performance as a pretext to discharge plaintiff because of her race. Plaintiff acknowledges the multiple complaints her supervisor received concerning her poor performance. Plaintiff offers no evidence of comments reflecting a discriminatory bias. Orozco hired multiple other black employees during her tenure as acting department head. Moreover, Orozco hired plaintiff in August 2007, then upgraded plaintiff's position to full-time in December 2007. Under the "same actor" doctrine, and in light of the entire record, plaintiff's claim is simply implausible. "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [her] an invidious motivation that would be inconsistent with the decision to hire." *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 101 (E.D.N.Y. 2010) (citing *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). In short, there is absolutely no evidence that the plaintiff's termination was motivated by race, and no rational trier of fact could conclude otherwise. Accordingly, summary judgment in defendant's favor is warranted.

7

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:	December 22, 2011
	Central Islip, NY

\*	\*	\*

Plaintiff is *pro se*, 1044 Adams Street, Uniondale, New York 11553. Defendant is represented by Arthur J. Robb, Clifton Budd & DeMaria, LLP, 420 Lexington Ave., New York, New York 10170.